Bradley R. GRAY and Anastasia B. Gray, Appellants,

v.

GENERAL MOTORS CORPORATION, Appellee.

No. 19901.

United States Court of Appeals, Eighth Circuit.

Nov. 17, 1970.

Before BLACKMUN,* MEHAFFY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Bradley Gray, as the owner and driver of a 1960 Chevrolet Corvair automobile, sustained severe bodily injuries in a two-car accident on U.S. Highway 169 near Shakopee, Minnesota, on December 10, 1960. His wife Anastasia, a passenger in the car, also sustained severe injuries. The accident occurred when an oncoming car crossed the center-line of the highway and struck the Gray vehicle head-on. In the present lawsuit, Mr. and Mrs. Gray sought damages against General Motors Corporation, the manufacturer of the Corvair, contending that defendant improperly designed the Corvair's steering column assembly and its unitized body structure. Anastasia Gray further charged General Motors with negligence for failing to install a pop-out windshield on the Corvair. Bradley Gray contended that he sustained aggravated injuries in striking the Corvair's noncollapsible steering column. Mrs. Gray similarly contended that her facial injuries were aggravated when she was thrown through the Corvair windshield.

After a trial lasting four weeks, the trial court submitted the plaintiffs' claims to a jury on theories of negligence and strict liability for distribution of a product unreasonably dangerous because of its defective design. The court's instructions on negligence complied with the principles enunciated in Larsen v. General Motors Corporation, 391 F.2d 495 (8th Cir.1968). The jury returned a verdict in favor of General Motors Corporation. Following the entry of judgment, the Grays moved for judgment notwithstanding the verdict or, alternatively, for a new trial. The trial court denied this combined motion and the plaintiffs appeal from the order denying their motion. We construe the appeal as being taken from the judg-

James G. Paulos and John S. Connolly, St. Paul, Minn., for appellants.

Franklin D. Gray, Minneapolis, Minn., for appellee.

* BLACKMUN, Circuit Judge, took no part in the disposition of this case.

ment itself and consider the merits.[1] Appellee raises no question concerning the propriety of the appeal.

Appellants raise several issues, contending that the trial court erred generally in the conduct of the trial, in admitting improper evidence, in withholding certain issues from the jury, and in instructing the jury on the applicable law. We have examined appellants' contentions and reviewed a record containing more than three thousand pages of transcript and find no basis for reversal. We turn to a consideration of each of appellants' contentions.

Appellants contend the trial court erred in admitting evidence of prior releases which the plaintiffs had executed with the driver of the other vehicle. As we have already noted, both Mr. and Mrs. Gray sustained severe injuries in the accident. In 1962, the Grays settled their claims against the driver of the other vehicle for a combined sum of $43,750.00 and executed general releases in favor of that driver as well as "all other persons, firms, or corporations" for all claims for personal injuries resulting from the accident. The plaintiffs commenced this suit against General Motors in October, 1966.

Appellants claim that the trial court should have stricken General Motors' defense that the releases which the Grays had executed constituted a release of all claims against all parties who might be liable to the Grays and that acceptance of the consideration recited in the releases represented full satisfaction for their injuries.

■ Appellants concede that the decision in Couillard v. Charles T. Miller Hospital, Inc., 253 Minn. 418, 92 N.W.2d 96 (1958), controlled the court's action. Judge Larson construed *Couillard* as requiring that the jury determine whether the releasor intended to discharge un-

named tortfeasors and whether the releasor accepted the compensation stipulated in the release in full satisfaction for his injuries. We agree with this construction. The Minnesota Supreme Court, in *Couillard*, said:

> We think that considerations of practical justice require us to say that a plaintiff should not be compelled to surrender his claim for relief against a wrongdoer unless he has intentionally done so, or unless he has received full compensation for his claim. Of course, where full satisfaction has been made, or where it is agreed that the amount paid under the release is accepted in full satisfaction, no claim should remain against any tortfeasor. *But these are questions of fact to be resolved by the jury.* [92 N.W.2d at 102 (Emphasis added)]

■ Anastasia Gray also contends that the trial court erred in refusing to submit her claim for loss of consortium to the jury. This contention lacks merit. In Thill v. Modern Erecting Company, 284 Minn. 508, 170 N.W.2d 865 (1969), the Minnesota Supreme Court overruled the common-law rule barring such claims and enunciated a new rule of law in Minnesota permitting the wife to claim loss of consortium for injuries sustained by the husband. The court, however, expressly declared that its ruling applied prospectively only, covering only those injuries sustained subsequent to September 19, 1969. 170 N.W.2d at 870. Furthermore, as noted by Judge Larson in denying the Grays' post-judgment motion, "the jury returned a verdict of no liability and it is difficult, therefore, to see how failure to instruct on what in effect, was an additional theory of damages was prejudicial even if erroneous." *See* Hatridge v. Aetna Casualty & Surety Company, 415 F.2d 809 (8th Cir.1969).

---

1. Where the appeal is otherwise proper, and the intent of the appellant to appeal from the final judgment is clear, we may treat the appeal as if taken from the final

judgment. Walther v. Omaha Public Power District, 412 F.2d 1164, 1165, n.1 (8th Cir. 1969).

Appellants contend they suffered substantial prejudice when the term "seat belts" was mentioned on two occasions in the jury's presence. This occurred during the defendant's cross-examination of a highway patrolman and later when an expert witness, called by the defendant, testified on direct examination. In both instances, Judge Larson sustained plaintiffs' objections and ordered the jury to disregard these comments. In doing so, we think he recognized the applicable Minnesota statute, which reads:

> Proof of the use or failure to use seat belts, or proof of the installation or failure of installation of seat belts shall not be admissible in evidence in any litigation involving personal injuries or property damage resulting from the use or operation of any motor vehicle. [MINN. STAT. ANN. § 169.685(4)]

■ The trial judge also offered to instruct the jury that lack of seat belts in the Gray automobile was irrelevant to any issue in the case. Appellants requested no such instruction. We think it manifest that during a trial of almost a month these two comments relating to seat belts did not substantially prejudice any rights of the appellants. At best, we deem these comments "harmless error" within the context of Rule 61, Fed. R.Civ.P. *See* Continental Casualty Company v. Jackson, 400 F.2d 285, 293 (8th Cir.1968); Sanitary Milk Producers v. Bergjans Farm Dairy, Inc., 368 F.2d 679, 685 (8th Cir. 1966).

■ Similarly, we find no merit in appellants' claim that the trial court erroneously permitted a General Motors' witness, one possessing considerable expertise in the dynamics of automobile crashes, to comment on skull x-rays taken of Bradley Gray. On direct examination, this expert witness opined that as a result of the collision Bradley Gray had struck the left side of his head upon the side rail of the Corvair's roof and this blow produced, through contrecoup, an injury to the right side of the brain.

On cross-examination, appellants' attorney challenged the witness to support his conclusion from the medical records. The witness referred to a physician's report in the medical file which recited that skull films showed a questionable linear fracture in the right parietal area. The witness then displayed the x-rays to the jury and pointed out the skull area in question. We think the record clearly shows that appellants' counsel invited the response which he now challenges. The record further discloses that he neither objected to, nor moved to strike, this testimony.

Moreover, appellants concede that in both the federal courts and in Minnesota the qualifications of an expert witness are matters within the sound discretion of the trial court. Altrichter v. Shell Oil Company, 170 F.Supp. 851, 852 (D. Minn.1957), aff'd, 263 F.2d 377 (8th Cir.1959). *See* Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); Lowe v. Taylor Steel Products Co., 373 F.2d 65, 69 (8th Cir.), cert. denied, 389 U.S. 858, 88 S. Ct. 85, 19 L.Ed.2d 122 (1967); Joseph A. Bass Company v. United States, 340 F.2d 842, 845 (8th Cir.1965). The expert witness here, as part of his qualifications, testified that he had examined several hundred x-rays in consultation with medical experts. Appellants did not challenge his qualifications. The record does not establish his lack of qualifications to interpret Bradley Gray's x-ray for the jury. *See* Mittlieder v. Chicago & Northwestern Ry. Co., 413 F.2d 77, 84 (8th Cir.1969); Twin City Plaza, Inc. v. Central Surety & Ins. Corp., 409 F.2d 1195, 1200–1202 (8th Cir.1969).

■ In another contention, appellants vigorously object to the trial court's ruling which permitted defendant's experts to testify with regard to the technological developments, based on extensive experimentation concerning crash mechanics and occupant kinematics, which ultimately made feasible energy-absorbing steering columns for General Motors'

automobiles several years after the accident in question. The district court permitted this type of evidence to rebut testimony produced by plaintiffs' witnesses on the state of automotive engineering technology in 1960. Plaintiffs' witnesses testified that automobile manufacturers could have reasonably equipped 1960 automobiles with energy-absorbing steering mechanisms to minimize injuries resulting from automobile accidents.

In ruling on the admissibility of evidence, federal judges are governed by Rule 43(a), Fed.R.Civ.P., which "favors the reception of evidence", and the trial court's ruling on such matters will not be disturbed absent an abuse of discretion. General Insurance Company of America v. Hercules Construction Company, 385 F.2d 13, 24 (8th Cir. 1967). See Frost v. Mayo Clinic, 304 F.Supp. 285, 288 (D.Minn.1969). Having reviewed the record on this issue, we find no abuse of discretion in the trial court's ruling.

In addition to these evidentiary matters, appellants contend that the trial court committed error in rejecting plaintiffs' theories of recovery predicated upon breach of an express warranty. Appellants interpret this action of the trial court as resting upon an erroneous computation for the statute of limitations period. Appellants contend that the trial court barred their breach of express warranty theory because plaintiffs had not timely filed their action within six years from the date of the sale of the automobile. They contend that the statute of limitations should have run not from the sale date, February, 1960, but from the date of the accident ten months later.

Appellants misread the record and, therefore, misinterpret the basis of the trial court's rejection of the breach of warranty theory. In denying appellants' post-trial motion, Judge Larson said of this contention:

[P]laintiffs claim breach of an express warranty. This claim is based upon several advertisements for General Motors cars in general and the Corvair in particular. Plaintiffs claim that the thrust of these ads is to represent the Corvair as being as safe or safer than any car on the road at that time. However, the word "safety" was used almost exclusively to identify a type of glass known as "safety plate glass." The ads do not refer to the crashworthiness of the vehicle, but to the introduction in 1960 of "safety plate glass" and to some extent to the braking system. In this case no claim was made that the brakes were defective or that the car was not equipped with "safety plate glass." For this reason it was not error for the Court to refuse to instruct the jury on express warranty.

On this appeal, appellants offer no rebuttal to the ruling of the trial court on this point. We therefore find it unnecessary to further discuss the issue.

Appellants also contest the language, but not the substance, of two jury instructions dealing with matters peripheral to the main issues in the case. Our review of the entire record satisfies us that any error in these instructions, at best, constituted harmless error.

We have thoroughly reviewed this record. Judge Larson fairly tried and submitted the case to the jury. In Skogen v. Dow Chemical Company, 375 F.2d 692, 706 (8th Cir.1967), Judge Gibson commented upon the function of a reviewing court in considering errors such as those alleged here:

In conclusion, the large bulk of plaintiffs' objections concern matters solely within the sound discretion of the trial judge. In such a case, "this Court cannot retroactively substitute its discretion for that of the trial judge, who had the feel of the case, * * *." Glawe v. Rulon, 284 F.2d 495, 498 (8 Cir.1960). We believe plaintiffs had a fair trial on the issues. The evidence was fairly presented to the jury, and in spite of the emotional impact naturally favoring the permanently injured plain-

tiffs, the jury resolved the issue in favor of defendants. The law was correctly given to the jury, the evidence overwhelmingly supported the verdict, and no prejudicial error was committed by the trial court, either in isolation or in the totality of all the alleged errors.

We find these comments applicable here.

Affirmed.